THE PEOPLE *ex rel.* George W. Niles *vs.* SMITH.

When proceedings under the statute relative to forcible entries and detainers are brought into the supreme court on certiorari, it is within the power of the court to examine them, and to quash them, if found irregular or insufficient.

To constitute a forcible entry and detainer, it must be accompanied by circumstances of force, or terror in respect to the person. A mere naked trespass upon the premises is not sufficient.

Thus, where the proof showed a mere ordinary entry, made under claim of title, without great or unusual force, or any terror, and there were no unusual weapons; no acts of violence; and no menaces, threats or gestures, which could give any ground to apprehend injury or danger from standing in defense of the possession; *it was held* that the case was not brought within the words of the statute, or the mischief it was designed to prevent.

MOTION to quash proceedings in forcible entry and detainer.

*J. L. Campbell,* for the defendant.

*G. W. Niles,* relator, in person.

BIRDSEYE, J. When the proceedings in a case like the present are brought into this court on certiorari, it is clearly within the power of the court to examine them, and to quash them, if found irregular or insufficient. That was done in *The People* v. *Reed,* (11 *Wend.* 157.) It cannot be that this court can be compelled to go through with these proceedings, without having the power or the opportunity to examine and

The People *v.* Smith.

ascertain whether jurisdiction has been obtained, of the subject matter, or of the parties; and whether the statutory prerequisites have been complied with. And if such an inquiry is ever to be made, it should be made at the commencement. The party taking the objection should do so at the first opportunity; otherwise it may be that he waives it. The court must pass upon it whenever presented. It would be strange that the court must go through with the formality of a trial and judgment, before having power to decide whether the proceedings were duly instituted or regularly conducted.

The precept issued in this case for the summoning of the jury, was in the precise form required by the statute. (2 *R. S.* 508, § 3.) The fact that Randolph furnished to the constable who had received the precept the notices for the jurors, is not sufficient to warrant the setting aside of the inquisition. Randolph was a constable, duly qualified to execute the precept and summon the jury. What would be the proper course to take, if it were shown that Randolph received the names of the jurors from the relator, or acted in any manner under his influence or control, need not now be inquired. I can see no irregularity or impropriety in either the selection or summoning of the jury.

The objection that *talesmen* were illegally introduced on the jury, is also untenable. The command of the precept was that the constable should cause twenty-four inhabitants of the county, duly qualified to serve as jurors, to come before the judge, to inquire of such forcible entry or such forcible holding. This command is not fulfilled, merely by returning the process with a statement that that number of persons had previously been duly summoned. He is to "cause" them "to come before such judge." And if a sufficient number of those first summoned do not attend, he is to summon others and make due return until the precept has been complied with, and the requisite number of jurors are actually in attendance. Were not this the meaning of the statute, the proceedings would in many instances prove wholly nugatory. It is to the persons thus "returned summoned," that the oath is to be administered.

The only remaining question, or rather perhaps the only question worthy of examination, is whether any evidence of a forcible entry was given to the jury.

It has been truly said, (9 *John.* 156 ; 11 *Wend.* 159,) that the proceedings under the statute to prevent forcible entry and detainer are of a peculiar and anomalous kind. They are loose, and of a mixed nature, being in substance a civil, and in form a criminal prosecution. The original statutes on the subject were solely criminal in their character ; and designed only to preserve public peace, and restrain all persons from the use of violent means of doing themselves justice. And though, in process of time, by the gradual addition of provisions looking to the restitution of the property forcibly taken or detained, the remedy has become a private rather than a public one, still the form of the proceeding, and the rules of law which govern it, still remain to a great degree unchanged. It has always been held that to make an entry forcible, it ought to be accompanied with some circumstances of actual violence or terror ; and, therefore, an entry which hath no other force than such as is implied by the law in every trespass whatsover, is not within these statutes. (*Hawk. P. C.*, b. 1, ch. 64, § 25.) And of a forcible detainer it is said, (*Id.* § 30,) that the same circumstances of violence or terror which will make an entry forcible, will make a detainer forcible also ; from whence it seems to follow, that whoever keeps in his house an unusual number of people, or unusual weapons, or threatens to do some bodily hurt to the former possessor, if he dare return, shall be adjudged guilty of a forcible detainer, though no attempt be made to re-enter.

It is said, in *Bacon's Abridgment*, (*vol.* 2, *p.* 558, *Forcible Entry and Detainer, B,*) that the entry must be with a strong hand, with unusual weapons, or with menace of life or limb. (*See also The People* v. *Rickert*, 8 *Cowen*, 232 ; *and Willard* v. *Warren*, 17 *Wend.* 257.) The latter case was a civil action, under 2 *R. S.* 338, *tit.* 6, § 4, to recover treble damages for a forcible entry and disseizin, &c. The kind and amount of force required to be shown, is there stated to be the same on the

The People *v.* Smith.

criminal and civil side; and the authorities are examined at length. It is sufficient to refer to that case, for a full view of those authorities. The conclusion arrived at was, that there must be circumstances of force or terror in respect to the person; and that a mere naked trespass to lands or outhouses never was yet holden sufficient.

In the case at bar, both the complaint and inquisition are for forcibly entering and forcibly holding the premises in question, which are a vacant lot on Grand street. The only evidence given on behalf of the complainant, was that of Zachariah Coleman. He states that he had possession of the lot, for George W. Niles, from 1850, up to about six months since; had it all inclosed, and front fence under lock and key; used it as a yard for the stable and houses adjoining. He put up a new fence in the rear, and aftewards in front. About six weeks ago Smith, the defendant, came and took possession and built a fence. He had a butcher's shop on the corner of it. He took the front fence and stuff. "My fences were knocked down. I was away, and when I returned I found the fences were down, and Smith was building on part of the lot, with part of the fence." He also says he saw some one cutting down the fence. This is the whole testimony as to the entry, and there is no evidence whatever as to the holding out.

It is obvious that this proof falls altogether short of that which the well settled rules of law require. The case shown is that of a mere ordinary entry, made under claim of title. If the defendant has no title, it is a common trespass. There was no great or unusual force; there was no terror; and if there was either, it could not relate to the person of the prior occupant. There were no unusual weapons; no acts of violence; no menaces, threats, signs or gestures, which could give any ground to apprehend injury or danger from standing in defense of the possession. The case is not brought within the words of the statute, or the mischief it was designed to prevent.

I feel the less hesitation in applying to these proceedings the familiar rule, that as they are summary and statutory, they must be strictly conformed to the statute, and are open to tech-

nical objections, (*Farrington* v. *Morgan*, 20 *Wend.* 207,) for no substantial right of either party could be settled by going to trial in this case. A trial and decision could only show which party is to remain in possession during the pendency of the action which is to establish the title to the lot. If the relator were restored to the possession, the real litigation would still remain. It is better that it be resorted to forthwith. If successful in that, he can recover all the damages he may sustain by reason of having been deprived of the possession.

The inquisition must be quashed, with costs.

[Kings Special Term, February 23, 1857. *Birdseye*, Justice.]