Breitel, J.
Defendant Horelick stands convicted of criminal trespass in the second degree, a class B misdemeanor (Penal Law, § 140.10, prior to amdt. L. 1969, ch. 341) and for resisting arrest (id., § 205.30). He has been sentenced to a fine of $500 or to serve 60 days’ imprisonment if the fine is not paid.
Both crimes were committed in resisting the exclusion of Horelick and other school teachers from a closed, locked high school, and the ensuing arrest by police officers. The events occurred during an emotional and incipiently riotous confrontation between factions during a so-called city-wide teachers’ *456 strike. The issue is not the lawfulness of the closing of the school, on which there may be divergent views, but the use of self-help to enter the school and then additional force to prevent arrest. Put another way, the issue is whether the resort to self-help by “breaking and entering” in the classic sense, is permitted, an issue laid to rest long ago by successive and ancient statutes relating to forcible entry and detainer (see Real Property Actions and Proceedings Law, § 853; former Penal Law, § 2034, and source annotations; as to use of force against the person to gain entry, see Model Penal Code [Tent. Draft No. 8, May 9,1958], § 3.06, esp. subds. [2], [3], and [6], including Comments, esp. at pp. 42-45; Restatement, 2d, Torts, § 88; Scope Note, at pp. 158-159; Ann., Right to Use Force, 141 A. L. R. 250, esp. 276).
Stating the issue thus, and it is stated correctly, the convolutions of theory and conflicting pronouncements by the embattled school authorities whether the schools were to be open or closed are immaterial. So are, ultimately, analyses related to claims of right by owners and others entitled to rights of entry under property law. Even such property rights, by still being subject to restrictions on the use of force, emphasize the policy against self-help by force or other illegal methods.
There is no doubt that the president of the board of education, and perhaps the board, had directed that the schools be kept open. It is equally undoubted that school principals are the immediate authorities in charge of their school buildings, with power (the exercise of which is reviewable by their superiors) to direct schools to be open or closed. Safety of students and teachers requires no less authority. There was also a prescription for opening schools improperly closed and that prescription was not followed by defendant Horeliclc or his associates.*
The principal in question, rightfully or wrongfully, had directed that the high school be kept closed. The school custodian, subject to the principal’s command, and in charge of *457 the school building while it was closed, kept it closed. It is irrelevant whether they did so out of factional motivation or because of fear that this high school, if opened, would be out of control. For their judgment and action, their conduct is reviewable elsewhere, and not by the subordinate school teachers, individually or as a body.
(Significantly, after the disorders and violence of October 17, the superintendent of schools issued a directive on the procedure for opening schools, which included the following: ‘11. Try to obtain key from the school principal. 2, Contact area office for: a) possible assistance; b) key to school if available. 3. District Superintendent try to obtain key from custodian or from police precinct by asking a patrolman to come with the key [This is subject to negotiation being carried on with Commissioner Leary and based on the assumption that the custodian did not change the locks.] Only the District Superintendent or the school’s principal or the person designated as acting principal known to the Police Precinct may arrange for a ‘ legal ’ break-in by: a) getting a locksmith; b) breaking lock or window in the presence of a policeman. They will permit this only in the presence of the District Superintendent or regularly assigned principal or designated acting principal.”)
The fact is that on October 17, 1968 the school building was closed. A group of teachers, including defendant Horelick, planned a take-over of the building, surreptitiously if possible. Horelick gained access to the building through a basement window and was discovered by a member of the custodial staff. A struggle ensued during which Horelick tried to open the locked doors of the school to admit his allies, who were not necessarily teachers or students. A police officer was caEed and Horelick resisted the arrest by physical efforts, trying to kick the policeman. It was when he was being placed in the police car that the codefendant Adickes played her part in repeatedly opening the police car door. While this was going on, a crowd of about 60 people, sympathetic to the open school effort, surrounded the police car.
To resolve the issue on whether the school was properly closed or not is, as has been already said, immaterial. The issue turns on whether the affected teachers had a 1 ‘ license ” or “ privilege ” to open the school by surreptitious entry and force, and *458 not whether they had a right or duty to be in the school (Penal Law, § 140.00, subd. 5). Since only force or some other illegal method could be used to effect an entry which would inevitably provoke counter-force (in this case, even riot), the remedy to open the school was by seeking the assistance of superiors who had the power (and perhaps the duty) to open the school. Even they were not entitled to use force, but they, if they wished to persist in their purpose to open the school, had to resort to the assistance of the police, and beyond that the courts. Whether one views the problem from the position of the 4 4 striking ’ ’ teachers or their antagonists it is not tolerable that the controversies be resolved in the streets or the school corridors, instead of under law, and in the courts, if necessary.
In this context, it is of less consequences, and it is even sadly regrettable, that a school teacher should suffer a penal sanction for conduct motivated by an ideology, even if sincere. It would be of the gravest consequence, however, to suggest that self-help force may be condoned or justified by an inapplicable analysis whether the school4 4 lawfully ’ ’ should have been open or closed.
Accordingly, the order of the Appellate Term should be affirmed.

 Paragraph 2 of the instructions read: “ In the event that the school cannot be opened because the custodian refuses to open the school, or is not present, call the borough custodian headquarters — as a second step, call the office of Mr. Hudson and Mr. McLaren.”