UNITED STATES of America ex rel.
James HORELICK, Petitioner-
Relator,

v.

The CRIMINAL COURT OF the CITY
OF NEW YORK et al., Respondents.

No. 73 Civ. 876.

United States District Court,
S. D. New York.

Nov. 26, 1973.

Paul G. Chevigny, New York Civil Liberties Union, New York City, for petitioner-relator.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for respondents.

LASKER, District Judge.

James Horelick petitions for habeas corpus relief from a conviction for two counts of criminal trespass and one count of resisting arrest. He was sentenced on June 18, 1970, to pay a fine of $250 or serve thirty days in jail on the first criminal trespass count and the resisting arrest count and to an additional $250 or thirty days for the second criminal trespass count. Horelick was ordered to surrender on February 28, 1973, but surrender was stayed by this court on February 27th.

Horelick's conviction results from incidents which occurred during the controversial strike of public school teachers in 1968. The strike, opposed by some teachers and favored by others, was subsequently held to be illegal. On October 16, 1968, the Board of Education voted that the schools were to remain open if even one teacher reported to work, and John Doar, then President of the Board, made a statement to that effect. District superintendents were authorized to designate teachers in charge empowered to open closed schools.

The following day a group of teachers, including the designated teacher in charge and Horelick, went to Washington Irving High School, where they were assigned to teach, and presented the teacher in charge's letter of authorization from the district superintendent to the school custodian.[1] When the latter refused to open the school,[2] Horelick nevertheless entered the building through a window with the intention of opening the doors himself. Inside the building, Horelick was stopped by the custodian, who called for the police who placed Horelick under arrest. After an altercation between Horelick and the officers, he was charged with criminal trespass and resisting arrest. Two days later, on October 19th, Horelick returned to the school. He was again asked to leave by the custodian, and, after refusing, was placed under arrest.

On October 20th, the Board of Education issued directives clarifying the procedures to be used by teachers in charge in opening schools kept closed by their custodians, which indicated that it did not authorize a teacher to open a school in the absence of the school custodian.[3]

1. When a public school is closed by its principal, the building is left in the charge of a custodial engineer. The letter was presented to the custodial engineer's assistant. For simplicity's sake, both the custodial engineer and his assistant are referred to in the opinion as the "custodian".

2. The custodial engineer's assistant refused to open the building because he was unable to verify by phone the authenticity of the letter.

3. Only the district superintendent or school principal was authorized by the directives to arrange "a 'legal' break-in." People's Exhibit 1.

People's Exhibit 1 at trial, Petition for Writ of Certiorari, p. 18a.

Subsequent to his arrest, Horelick brought a civil rights action in this court for an injunction against his prosecution and for damages. The complaint was dismissed and dismissal was affirmed by the Court of Appeals. Adickes v. Leary, 436 F.2d 540 (2d Cir.), cert. denied sub nom. Adickes v. Murphy, 404 U.S. 862, 92 S.Ct. 66, 30 L.Ed. 2d 606 (1971). Simultaneously, Horelick sought to remove the prosecution to this court. However, the case was remanded to the state court and remand was affirmed by the Court of Appeals. People v. Horelick, 424 F.2d 697 (2d Cir.), cert. denied sub nom. Horelick v. New York, 398 U.S. 939, 90 S.Ct. 1839, 26 L.Ed.2d 273 (1970). As discussed above, after trial in the state court, Horelick was convicted of criminal trespass and resisting arrest in June, 1970. The conviction was affirmed by the Appellate Division in November, 1971. In June, 1972, by a four to three vote, the New York Court of Appeals affirmed the lower court rulings. People v. Horelick, 30 N.Y.2d 453, 334 N.Y.S.2d 623, 285 N.E.2d 864. Chief Judge Fuld and Judges Bergan and Gibson dissented in an opinion written by Judge Bergan. Id. at 458, 334 N.Y.S.2d 623, 285 N.E.2d 864. Horelick sought reargument, but his motion was denied. 31 N.Y.2d 709, 337 N.Y.S.2d 1029, 289 N.E.2d 569.

The United States Supreme Court denied certiorari in February, 1973 (410 U.S. 943, 93 S.Ct. 1372, 35 L.Ed.2d 610), and, as noted above, Horelick was then ordered to surrender.

Horelick seeks habeas corpus relief on several grounds. First, he claims that the New York Court of Appeals in affirming his conviction so changed the nature of the crime with which he was charged as to deprive him of notice of the charges against him and an opportunity to defend against them in violation of the due process clause of the Four-

teenth Amendment. Corollaries to this argument are Horelick's contentions that the change in the law of criminal trespass effectuated by the Court of Appeals' decision constituted *ex post facto* law-making and that, as interpreted, the criminal trespass provision is unconstitutionally vague and overbroad. Horelick further contends that to convict him for activities which he reasonably believed were authorized by the Board of Education is a form of governmental entrapment forbidden by the due process clause.

Respondents oppose Horelick's petition on the merits, but they also argue that habeas relief is precluded by the following procedural defects in the petition: 1) Horelick is not in custody as required by 28 U.S. §§ 2241(c) and 2254(a); 2) he has not exhausted his state remedies or has by-passed an available appellate procedure in violation of 28 U.S.C. § 2254(b); and 3) the issues presented here have already been decided adversely to Horelick in the prior federal litigation, so that he is barred by 28 U.S.C. § 2244(b) from raising them again.

The first question presented by respondents, whether Horelick is "in custody" although he has not yet surrendered to serve his jail term, has been answered adversely to their position by a decision of the Supreme Court handed down since the papers on this motion were submitted. In Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), the court held that a petitioner who was released on his own recognizance pending appeal from his conviction and pending adjudication of his habeas corpus petition was in custody within the meaning of the federal habeas corpus statute. The situation there is indistinguishable from the one before us. [4]

Respondents' argument that Horelick failed to exhaust his remedies is equally without merit. Respondents claim that because the Court of Appeals

---

4. Respondents conceded prior to the *Hensley* decision that a ruling in that case would be applicable to the case at hand.

of New York did not decide on direct appeal the issues presented here, although those issues were squarely raised on the motion to reargue, Horelick is obliged to seek collateral relief from the state courts before federal jurisdiction will lie. This is not the law. The fact that the state courts had the opportunity to deal with a petitioner's constitutional claims eliminates the requirement of further exhaustion. United States ex rel. Williams v. Zelker, 445 F.2d 451 (2d Cir. 1971) appears to us to be directly on point. *See also* Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

■■ Furthermore, it is well established that exhaustion is not required where it "will almost certainly be futile." United States ex rel. Hughes v. McMann, 405 F.2d 773, 775–776 (2d Cir. 1968). A collateral attack here would entail requesting the lower courts of the state to find the conduct of its highest court constitutionally defective, an endeavor that would surely be as unrewarding as time-consuming.

■ Respondents argue further that Horelick by-passed an available appellate route by failing to *appeal* to the Supreme Court, petitioning instead for a writ of certiorari. They contend that if in fact Horelick exhausted his state remedies by presenting the Court of Appeals on reargument with the issue whether its construction of the statute rendered it unconstitutionally vague and overbroad, then the Court of Appeals' denial of the motion to reargue in effect upheld a state statute against federal constitutional attack giving Horelick a ground to appeal as of right to the Supreme Court. If so, the argument runs, by opting for the discretionary certiorari route, Horelick has deliberately by-

passed an available appellate procedure barring his present habeas petition.

This approach is seriously flawed. It is unlikely that the correct route to the Supreme Court in Horelick's case was by appeal. The argument that the statute as interpreted is unconstitutional for vagueness and overbreadth, on which the right of appeal is predicated, is really secondary to the questions which predominated in the petition for a writ of certiorari and which are at the heart of the petition for habeas corpus relief. The crux of petitioner's argument is and has always been that the state proceedings deprived him of due process because the state denied him fair notice of the charges against him, subjected him to an *ex post facto* law and entrapped him. These issues are a proper subject for certiorari, but are not a ground for appeal. 28 U.S.C. § 1257. At the very least, it is safe to conclude that Horelick's failure to take an appeal under the circumstances did not constitute a deliberate by-pass barring relief in this court, especially since there was nothing for Horelick to gain by yielding an appeal of right.

■ Finally, respondents' claim that habeas corpus relief in this court is barred by 28 U.S.C. § 2244(b), because of the federal litigation which preceded Horelick's trial in state court, is patently frivolous. Respondents' concede, as they must, that the principles of *res judicata* and collateral estoppel do not apply to habeas corpus petitions. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). Accordingly, respondents rely on § 2244.

■ Both the letter and the spirit of that section render it inapplicable. Section 2244(b) on its face only covers successive applications for the *same* relief, habeas corpus.[5] Therefore, by its own

---

5. Title 28 U.S.C. § 2244(b) reads as follows:
 "When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or

a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the

terms, it cannot preclude the petition before us, which is Horelick's first request for habeas corpus relief. As discussed above, the earlier federal litigation was brought by Horelick under the Civil Rights Act prior to his trial and therefore obviously before he was "in custody pursuant to the judgment of a State court."

■ Furthermore, as the *Sanders* Court stated, "§ 2244 is addressed only to the problem of successive applications based on grounds previously heard and decided." [6] 373 U.S. at 12, 83 S.Ct. at 1075. We cannot conceive how issues which arise from a decision by the state's highest appellate court could have been "heard and decided" before *any* state court, much less the highest court, had rendered a decision.[7]

We turn finally to the merits. Horelick's contention is that the New York Court of Appeals could not affirm his conviction for criminal trespass because the conduct proven at trial did not constitute trespass. Accordingly, in order to sustain his conviction, Horelick argues, the Court of Appeals was obliged to transform the law of trespass by importing into it a foreign element borrowed from the offense of forcible entry and detainer. Horelick's argument is two-fold: 1) The proof adduced supported neither the charge of trespass nor the uncharged crime of forcible entry and detainer; 2) the New York Court of Appeals' affirmance of his conviction on a combination of the two, even assuming that the latter had been proven, deprived him of due process of law by denying him fair notice of the charge against him and by subjecting him to *ex post facto* judicial legislation.

■ Since Horelick's position relies entirely on his interpretation of the New York state law of trespass and forcible entry and detainer, analysis of applicable state law is indispensable to a determination of the merits of his constitutional claims. Horelick was charged with two counts of criminal trespass in the second degree. The applicable provision, Penal Law § 140.10, McKinney's Consol.Laws, c. 40, provides:

> "A person is guilty of criminal trespass in the second degree when he knowingly enters or remains unlawfully in a building or upon real property which is fenced or otherwise enclosed in a manner designed to exclude intruders."

The law is established that criminal trespass is not proven absent evidence of criminal intent, which entails knowledge possessed by the person charged that his presence is unauthorized. People v. Lawson, 44 Misc.2d 578, 254 N.Y.S.2d 300 (App.Term 1964), aff'd, 16 N.Y.2d 552, 260 N.Y.S.2d 661, 208 N.E.2d 466 (1965) (prosecution under § 140.10's predecessor, Penal Law § 2036). The Appellate Division cogently summarized the laws of trespass under § 140.10's predecessor statute in People v. Barton, 18 A.D.2d 612, 234 N.Y.S.2d 263 (1962):

> "The record is insufficient to support a conviction for the crime charged because there was no proof that defendant's intrusion was not authorized by the owner of the land nor was the evidence sufficient to establish any criminal intent.

---

United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ . . . ."

6. The Court was referring to § 2244(a), but the same principles apply to § 2244(b).

7. Respondents' argument on this point takes the statement in Adickes v. Leary, 436 F.2d 540, 542 (2d Cir.), cert. denied sub nom. Adickes v. Murphy, 404 U.S. 862, 92 S.Ct. 66, 30 L.Ed.2d 606 (1971), that "[t]he trespass arrests were therefore not illegal" as a definitive ruling on the merits of the case. This simplistic approach disregards the fact that the Court of Appeals was addressing itself to one issue only, whether Horelick and a co-plaintiff had stated a cause of action for damages against the persons involved in their arrest. It is unrealistic to construe this determination, reached in reviewing the granting of a motion to dismiss, as a final pronouncement on the merits of the case.

* * * * *

[A] colourable claim of right—even if it were mistaken—negatives the criminal intent necessary for a conviction under Section 2036 of the Penal Law." *Id.* at 612–613, 234 N.Y.S.2d at 264. *See also* People v. Stevens, 109 N.Y. 159, 16 N.E. 53 (1888). Accordingly, if Horelick's presence in the school was authorized or if he had reason to believe that it was authorized, his conviction could not be sustained under the law as it existed when the charges against him were brought.

Horelick argues that the statement of the President of the Board of Education that the schools were to remain open and that closed schools could be opened by the teacher in charge constituted actual authorization to enter the school. The argument is persuasive and were we sitting as a court of first impression we might well accept it.

 The effect of the statement is a subject which throughout the proceedings involving Horelick has created extensive difference of opinion. The trial judge found that Horelick's conduct was not authorized and we do not take issue with this finding inasmuch as nothing of substance turns on it. Even if Horelick's entry was in fact unauthorized, his conviction for trespass is vulnerable if he reasonably believed it to be authorized. To reiterate the holding of People v. Barton, a "colourable claim of right—*even if it were mistaken*—negatives the criminal intent necessary for a conviction." 18 A.D.2d at 612–613, 234 N.Y.S.2d at 264 (emphasis added).

As the three dissenting judges of the New York Court of Appeals found, the record, far from proving absence of authorization beyond a reasonable doubt, establishes a strong claim of right negating the intent necessary to prove trespass. John Doar, the Board of Edu-

cation's President at the time of the strike, testified at Horelick's trial that the Board had voted to keep the schools open during the strike and that, with the Board's authorization, he had issued a directive to that effect to, among others, "the employees of the school board" (Transcript at 159A), "to tell publicly employees of the Board and custodians and we want to make it clear even if one teacher would want to go to school to teach that the school would be open" (Transcript at 164). This was an accurate paraphase by Doar of his televised statement of October 16, 1968, which said:

> "To assure that our system, partially crippled by this illegal strike, remains open and available to those administrators, teachers and students who choose to work, the Superintendent has directed all District Superintendents to open—and keep open—every school where any teachers, in fact where only one teacher, reports to work. He has directed that if only one teacher reports—in the absence of other administrators—that teacher is to be in charge of the school." Defendant's Exhibit C.

As Judge Bergan's opinion sums it up, "Mr. Horelick was assigned to this school and his right—indeed his duty under the board's directive—was to be there in spite of an illegal strike." 30 N.Y.2d at 459, 334 N.Y.S.2d at 627, 285 N.E.2d at 867. When "the highest authority in the school system had published a directive advising that the schools would remain open and inviting teachers to come to work" (*id.* at 459–560, 334 N.Y.S.2d at 627, 285 N.E.2d at 867), we conclude, as did the dissenting judges, that the argument that Horelick did not have a colorable claim of right simply lacks basis in fact.

In short, however much the question of actual authorization can be debated,[8]

---

8. We agree, of course, with the minority opinion that the directives issued by the Board of Education on October 20th are no evidence as to the standards governing Horelick's behavior on the 17th and 19th and

with their conclusion that "[i]f there is confusion in the sequential exercise of authority under the board's action here, it is a confusion which does not help the prosecution to establish beyond a reasonable doubt that this

the evidence overwhelmingly established that Horelick could and did reasonably believe that he was authorized to enter the school. Accordingly, as the law of trespass stood at the time he was charged with it, he could not have been found guilty.

This was the conclusion of the three dissenting judges of New York's Court of Appeals and as far as they were concerned the inquiry stopped there. The majority opinion of the New York Court of Appeals affirming the conviction also implicitly recognizes that the law of trespass alone could not sustain it. As that opinion posits it:

> "The issue is not the lawfulness of the closing of the school, on which there may be divergent views, but the use of self-help to enter the school and then additional force to prevent arrest. Put another way, the issue is whether the resort to self-help by 'breaking and entering' in the classic sense, is permitted, an issue laid to rest long ago by successive and ancient statutes relating to forcible entry and detainer." 30 N.Y.2d at 456, 334 N.Y.S.2d at 624, 285 N.E.2d at 865.

 The majority is clearly correct that the law of forcible entry and detainer holds that even authorized entry upon land owned or occupied by another can be criminal if accompanied by an excessive use of violence. This, however, is the beginning and not the end of the inquiry, since the questions remain whether the record establishes the requisite force and whether, if it does, this fact can be utilized as the predicate of a trespass conviction.

 The leading New York case delineating the kind of force which is punishable as forcible entry and detainer is Fults v. Munro, 202 N.Y. 34, 95 N.E. 23 (1911). We quote the opinion extensively in order to clarify the relationship between trespass and forcible entry and

the type of force which constitutes the latter:

> "The expression 'in a forcible manner,' as used in the statute, does not mean any kind of force, such as is involved in a mere trespass. Thus, as was held in a leading case after a careful review of the authorities: 'The entry or detainer must be riotous, or personal violence must be used, or there must be threats or menaces of violence, or other circumstances must exist inducing alarm or terror in the occupant of the premises.' Willard v. Warren, 17 Wend. 257. As was said in another case which has frequently been cited: 'It has always been held that, to make an entry forcible, it ought to be accompanied with some circumstances of actual violence or terror; and therefore an entry which hath no other force than such as is implied by the law in every trespass whatsoever is not within these statutes.' People ex rel. Niles v. Smith, 24 Barb. 16, 18.

> "The force used must be unusual and tend to bring about a breach of the peace, such as an entry with a strong hand, or a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life or limb, or under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession." Id. at 41–42, 95 N.E. at 25–26.

The principles laid down in Fults have been reaffirmed time and again by the New York courts. Thus, in Drinkhouse v. Parka Corp., 3 N.Y.2d 82, 164 N.Y.S. 2d 1, 143 N.E.2d 767 (1957), the Court of Appeals said:

> "[F]orcible entry or detainer . . . applies only where the force employed . . . is unusual, tends to bring about a breach of peace, and the entry is with a strong hand, or by

defendant teacher 'knowingly' entered or remained 'unlawfully in a building' (Penal Law, § 140.10)." 30 N.Y.2d at 459, 334 N.Y.S.2d at 627, 285 N.E.2d at 867.

a multitude of people, or in a riotous manner, or with personal violence, or with threat and menace to life and limb under circumstances which would naturally inspire fear and lead one to apprehend danger of personal injury if he stood up in defense of his possession (Fults v. Munro, 202 N.Y. 34, 95 N.E. 23; Arout v. Azar, 219 App. Div. 260, 219 N.Y.S. 431). Mere trespass does not give rise to such an action, even when it is accompanied by 'wrenching off the lock' (Bach v. New, 23 App.Div. 548, 48 N.Y.S. 777, 778; Schrier v. Shaffer, 123 App.Div. 543, 107 N.Y.S. 1107)." *Id.* at 91, 164 N. Y.S.2d at 7, 143 N.E.2d at 771.

See also Brandt v. De Kosenko, 57 Misc. 2d 574, 293 N.Y.S.2d 489 (Appt. Term 1968). Thus, only force of an extraordinary nature will constitute forcible entry and detainer under New York law.

 The majority opinion of the Court of Appeals concludes that the situation at the school on October 17th contained an incipient danger of riot.[9] 30 N.Y.2d at 458, 334 N.Y.S.2d 623, 285 N. E.2d 864. We have reviewed the relevant portions of the record with care and find that neither riot nor threat to life or limb, as required by *Fults*, is established. At most the record reveals the presence of a crowd of teachers and students near the school on October 17th. Transcript at 57, 101–103, 121. The only proof in the record of crowd activity or of Horelick inciting the crowd to act concerned the brief scuffle which occurred while Horelick was being placed in the patrol car outside the school building. Transcript at 101–103. This incident is a far cry from a riot and in any event is not relevant to the issue of trespass or forcible entry since it took place after Horelick was arrested and outside of the building. In short, no evidence of riot was adduced.

 In any event, even if the record had conclusively established the facts

necessary to support a conviction for forcible entry and detainer, the question would still remain whether the test for such a conviction can properly be assimilated into the law of trespass to support a conviction for the latter. Horelick relies on three decisions of the Supreme Court, Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 358 (1972), to argue that it cannot.

In Cole v. Arksansas, the Court vacated a conviction which had been obtained under one provision of state law, but on appeal upheld under another. In so doing, the Court reiterated an already well settled rule:

"No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." 333 U.S. at 201, 68 S.Ct. at 517.

In applying this principle to the facts before it, the Court concluded:

"It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Id.*

In Bouie v. City of Columbia, the Court was confronted with a factual situation not dissimilar to the one before us. The state appellate court had affirmed convictions for trespass even though the statute on its face required proof that notice prohibiting entry had been given and such proof had not been adduced. The petitioners argued that by altering the statute to fit the facts,

9. We assume that the majority is using the word "riot" in the colloquial sense and not as defined in Penal Law § 240.06, which requires a finding of physical injury to a nonparticipant or substantial property damage, neither of which occurred here.

"the State [had] punished them for conduct that was not criminal at the time they committed it, and hence [had] violated the requirement of the Due Process Clause that a criminal statute give fair warning of the conduct which it prohibits." 378 U.S. at 350, 84 S.Ct. at 1701. Reversing the state court decision, the Court stated that "[t]here can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language" [10] (*id.* at 352, 84 S.Ct. at 1702) and concluded that "[i]ndeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids" (*id.* at 353, 84 S.Ct. at 1702).

Unlike *Bouie,* which involved state court affirmance of a conviction despite the absence of proof of what had theretofore been considered an essential element of the crime, Rabe v. Washington saw a conviction sustained by the Washington Supreme Court because of the presence of an element which had not before been found sufficient to render otherwise legal conduct criminal. Rabe was a motion picture operator who was convicted for showing an obscene movie in a drive-in theater. The state appellate court found that the picture would not have been obscene if shown only to consenting adults. It affirmed, however, because in its opinion the context of the showing made it susceptible to

proscription. The Supreme Court reversed:

"To avoid the constitutional vice of vagueness, it is necessary, at a minimum, that a statute give fair notice that certain conduct is proscribed. The statute under which petitioner was prosecuted, however, made no mention that the 'context' or location of the exhibition was an element of the offense somehow modifying the word 'obscene.' Petitioner's conviction was thus affirmed under a statute with a meaning quite different from the one he was charged with violating." 405 U.S. at 315, 92 S.Ct. at 994.

Applying the principles enunciated in *Cole, Bouie* and *Rabe,* Horelick's trespass convictions cannot stand. Like the petitioners in *Cole,* Horelick's conviction for trespass was sustained essentially because the majority of the Court of Appeals found that his conduct constituted forcible entry and detainer. Of course, the state court in *Cole* specifically affirmed on the basis of a separate and distinct criminal offense, whereas the New York Court of Appeals here has achieved the same end merely by importing the elements of the second offense into the first. In this respect, Horelick's case more closely resembles *Bouie* and particularly *Rabe* than *Cole.* In any event, we conclude that Horelick was punished for conduct which was not criminal when committed and that the specific nature of the charge against him was not made known to him in time for him to defend against it. Accord-

---

10. In fact, *Bouie* implies that the injustice is greater in the latter case than in the former:

"The thrust of the distinction, however, is to produce a potentially greater deprivation of the right to fair notice in this sort of case, where the claim is that a statute precise on its face has been unforeseeably and retroactively expanded by judicial construction, than in the typical 'void for vagueness' situation. When a statute on its face is vague or overbroad, it at least gives a potential defendant some notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct. When a statute on its face is narrow and precise, however, it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." 378 U.S. at 352, 84 S.Ct. at 1701.

ingly, as to the trespass convictions, he is entitled to habeas corpus relief.[11]

 The question remains whether Horelick's conviction for resisting arrest can stand. We agree with the dissenting judges of the New York Court of Appeals that the evidence against Horelick on this count is weak. However, the mere fact that had we tried the case in the first instance we would have reached a different conclusion than did the state courts does not entitle Horelick to the relief he seeks. Title 28 U.S.C. § 2254(d) states:

> "In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State . . . were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct."

The presumption is conclusive unless one of eight conditions is met. The only condition which could arguably apply to this case is "(8) . . . the Federal court on a consideration of . . . the record as a whole concludes that such factual determination is not fairly supported by the record." *Id.* We have carefully reviewed the record and are unable to say that the state court's determination of guilt on the charge of resisting arrest "is not fairly supported by the record." Unless one of the conditions mentioned above is met, "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court

was erroneous." *Id.* We find that Horelick has failed to carry that burden.

Horelick's position does not depend on a factual challenge of the record. Rather, he claims that his resisting arrest conviction is constitutionally defective in two respects: 1) The Court of Appeals affirmance incorporated the resisting arrest charge into the trespass charge by using it to support their theory of forcible entry and detainer, rather than considering it separately, thus denying him due process of law; and 2) since his arrest was unlawful, he had a right to resist it and could not be criminally punished for such resistance.

 We find the first point unpersuasive. The majority opinion does describe the incidents surrounding the arrest at the same time as it discusses the factual basis of the forcible entry and detainer argument. However, in so doing, it states that "[a] police officer was called and Horelick resisted the arrest by physical efforts, trying to kick the policeman" (30 N.Y.2d at 457, 334 N.Y.S.2d at 625, 285 N.E.2d at 866), plainly indicating its agreement with the holding of the courts below on the specific issue whether Horelick was guilty of resisting arrest.

We also reject Horelick's argument that he had a right to resist the arrest because it was unlawful. It is true that Justice Jackson stated in United States v. Di Re, 332 U.S. 581, 594, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948) that "[o]ne has an undoubted right to resist an unlawful arrest, and courts will uphold the right of resistance in proper cases." Nonetheless, for several reasons, we do not find this statement controlling. In the first place, the assertion is pure dictum, the issue in *Di Re* being whether probable cause to arrest can be inferred from *lack* of resistance. Secondly, no

---

11. Our conclusion that the Court of Appeals' interpretation of § 140.10 deprived Horelick of due process by subjecting him to *ex post facto* judicial legislation and by denying him

fair notice obviates the necessity of deciding whether the statute as applied is void for vagueness and overbroad and whether the state's conduct constituted entrapment.

independent authority is cited to support it. Finally, the fact that *Di Re* was decided twenty-five years ago makes it poor precedent in an area which has been considerably rethought in recent years.

 The right to resist unlawful arrests, although deeply rooted in the common law tradition, has been viewed with increasing disfavor. Defiance of Unlawful Authority, 83 Harv.L.Rev. 626, 636 (1970) [hereinafter "Unlawful Authority"]; Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L.J. 1128, 1129–33 (1969) [hereinafter "Chevigny"]. New York has expressly rejected it by statute [12] (Penal Law § 35.27 (McKinney's Supp. 1972)) and its statutory rule overrides the common law approach unless there are constitutional objections.

Various constitutional bases for the right have been suggested (Chevigny at 1138–39),[13] but none has been accepted by the courts (Unlawful Authority at 638).[14] Horelick relies on two arguments: 1) That resisting arrest constitutes disobedience to an unlawful order which the Supreme Court has held, in some instances at least, cannot constitutionally be punished; and 2) that its punishment is a form of entrapment because it is the natural and predictable response to lawless governmental provocation.

 Undeniably, the Court has held that a person cannot be punished for refusal to obey a police *order* which violates his constitutional rights. *See,*

e. g., Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); Wright v. Georgia, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963). The question remains, however, whether resistance to an unlawful *arrest* more closely resembles refusal to obey an unlawful police order, which is not punishable, than disobedience of a constitutionally defective court order, which the Court has held *is* punishable by contempt. Walker v. Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

An unlawful arrest, like both a police order and a court order, can result in immediate interference with enjoyment of constitutional rights. It differs, however, from the former and resembles the latter in that an unlawfully arrested person like an unlawfully restrained one has open to him an opportunity to vindicate his rights in court. These rights are not irrevocably compromised by initial compliance as they are in the case of the person who obeys a police order and who, as a result, forever loses his chance to contest it by allowing the policeman the final say. Put otherwise, the arrest and the court order have built into them the potential of submitting the dispute to the impartial determination of the courts of law (including the appellate courts). The unlawful police order, on the other hand, if obeyed, makes the policeman the final arbiter. This distinction persuades us that Horelick's situation is controlled not by *Shuttlesworth* and *Wright,* but by *Walker.*

---

12. New York is not alone in taking this position. *See, e. g.,* Cal. Penal Code § 834a (West 1970); Del.Code Ann. tit. 11, § 1905 (1953); Ill.Rev.Stat. ch. 38, § 7–7 (1971); N.H.Rev.Stat.Ann. § 594.5 (1955); R.I.Gen. Laws Ann. § 12–7–10 (1970); State v. Koonce, 89 N.J.Super. 169, 214 A.2d 428 (App.Div.1965).

13. Chevigny suggests three possible constitutional grounds for resisting arrest: 1) That it is necessary to vindicate other constitutional rights; 2) that it constitutes disobedience to an unlawful order; and 3) that it is

a response to governmental provocation. Chevigny at 1138–39. Since the first is not applicable to this case, Horelick relies on the last two.

14. In Wainright v. City of New Orleans, 392 U.S. 598, 88 S.Ct. 2243, 20 L.Ed.2d 1322 (1968), two justices, dissenting from the dismissal of a writ as improvidently granted, suggested the possible existence of a right to resist arrest. *Id.* at 608, 88 S.Ct. 2243 (Warren); *id.* at 613, 88 S.Ct. 2243 (Douglas).

Horelick's second argument, that to permit the state to punish resistance to an unlawful arrest is to countenance a form of entrapment, because the unjustified arrest constitutes governmental provocation to the arrested person whose defiance is its natural consequence, is an appealing one. Circumstances are readily imaginable in which an arrest would be so flagrant an intrusion on a citizen's rights that his resistance would be virtually inevitable. Such circumstances were not present in this case. Horelick had a colorable claim of right to be in the school, but the police had a colorable basis for his arrest. Adickes v. Leary, 436 F.2d 540, 542 (2d Cir. 1971), cert. denied sub nom. Adickes v. Murphy, 404 U.S. 862, 92 S.Ct. 66, 30 L.Ed.2d 606 (1971). Thus, however understandable Horelick's reaction may be in light of the emotionally charged situation in which the arrest occurred, it was not the legally justified result of deliberately lawless official provocation. Accordingly, we find no entrapment.

Thus, since Horelick had no constitutional right to resist arrest and the common law right has been preempted by the New York statutory rule, his resistance is properly punishable. This conclusion creates something of a dilemma in view of the fact that a single sentence was imposed on Horelick covering both the first trespass and the resisting arrest counts. Transcript at 574. It is impossible to allocate what part of that sentence represents the punishment for resisting arrest, especially since the combined sentence was identical to the sentence for the second trespass count which did not involve a resisting arrest charge. *Id.* at 575.

Accordingly, the convictions for trespass are set aside and the writ is granted in full unless the State resentences Horelick for resisting arrest within thirty days.

It is so ordered.