UNITED STATES ex rel. James HORELICK, Petitioner-Appellee,

v.

The CRIMINAL COURT OF the CITY OF NEW YORK et al., Respondents-Appellants.

No. 35, Docket 74–1183.

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1974.

Decided Dec. 5, 1974.

38

Margery Evans Reifler, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondents-appellants.

Paul Chevigny, New York Civ. Liberties Union, New York City (Alan H. Levine, New York City, of counsel), for petitioner-appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is by the State of New York from a grant of habeas corpus relief from convictions on two counts of criminal trespass under the old N.Y. Penal Law § 140.10 (McKinney's Consol. Laws, c. 40, 1967); [1] the court below denied relief for a conviction on one count of resisting arrest under N.Y. Penal Law § 205.30 (McKinney 1967) which is not appealed. Appellee was sentenced on June 18, 1970, by the Criminal Court of the City of New York, which conviction was affirmed by the Appellate Division in November, 1971, and in turn by a 4–3 vote in the New York Court of Appeals in June, 1972, People v. Horelick, 30 N.Y.2d 453, 285 N.E.2d 864, 334 N.Y.S.2d 623 (1972), motion for reargument denied, 31 N.Y.2d 709, 337 N.Y.S.2d 1029, 289 N.E.2d 569, cert. denied, 410 U.S. 943, 93 S.Ct. 1372, 35 L.Ed.2d 610 (1973). The original sentence was to pay a fine of $250 or serve 30 days in jail on one criminal trespass count and the resisting arrest count, and an additional $250 or 30 days for the second criminal trespass count. District Judge Lasker below by order of November 26, 1973, held the convictions for trespass to be unconstitutional and set them aside, granting the writ in full unless the State resentenced the appellee for resisting arrest within 30 days. United States ex rel. Horelick v. Criminal Court of the City of New York, 366 F.Supp. 1140 (1973). The State appeals.[2]

The district court held that Horelick's conviction deprived him of due process

---

1. The statute read:
    A person is guilty of criminal trespass in the second degree when he knowingly enters or remains unlawfully in a building or upon real property which is fenced or otherwise enclosed in a manner designed to exclude intruders.
    Criminal trespass in the second degree is a Class B misdemeanor.
    While the statute has since been retitled to make the crime criminal trespass in the *third* degree, it is still a Class B misdemeanor.

2. After his initial arrest Horelick brought a civil rights action in federal court for an in-junction against his prosecution and for damages, but the complaint was dismissed and the dismissal affirmed by this court. Adickes v. Leary, 436 F.2d 540 (2d Cir.), cert. denied, 404 U.S. 862, 92 S.Ct. 66, 30 L.Ed.2d 606 (1971). Simultaneously Horelick sought to remove the prosecution to the federal court, but the case was remanded to the state court and the remand affirmed by this court. People v. Horelick, 424 F.2d 697 (2d Cir.), cert. denied, 398 U.S. 939, 90 S.Ct. 1839, 26 L.Ed.2d 273 (1970).

of law because, since the proof adduced did not support the charge of trespass, he had no fair notice of the charge against him and because it subjected him to retroactive judicial legislation. This ex post facto act, Judge Lasker held, consisted of the New York Court of Appeals' importing the law of forcible entry and detainer into the criminal trespass law. We are thus required to examine the facts underlying the conviction and to determine whether the record is totally devoid of evidentiary support of the finding of criminal trespass and then to determine whether the New York Court of Appeals retroactively amended or changed the criminal trespass statute in such a way as to punish Horelick for conduct that was not criminal at the time that he committed it. *See* Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 358 (1972) (obscenity statute); Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (trespass statute). *See also* Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948).

The convictions in question resulted from incidents occurring during the well-known, if not now too well-remembered, strike of public school teachers in New York City in 1968. This strike, it will be recalled, was held to be illegal. *See* Rankin v. Shanker, 23 N.Y.2d 111, 242 N.E.2d 802, 295 N.Y.S.2d 625 (1968); N.Y.Civ.Serv.Law § 210 (McKinney 1973). On October 16, 1968, Mr. John Doar, the president of the Board of Education, issued a statement on its behalf reading in part as follows:

> To assure that our system, partially crippled by this illegal strike, remains open and available to those administrators, teachers and students who choose to work, the Superintendent has directed all District Superintendents to open—and keep open—every school where any teacher, in fact where only one teacher, reports to work. He has directed that if only one teacher reports—in the absence of other administrators—that teacher is to be in charge of the school.

In accordance with, but supplementary to, the instructions of the Board of Education and the Superintendent of Schools, the Executive Deputy Superintendent at 110 Livingston Street, Brooklyn, on October 17, 1968, issued a statement which said in part:

> Wherever a competent teacher of a school appears and is willing to assume responsibility for the supervision of the school, such a teacher should be designated to open the school. Please do this in writing, on official stationery, addressing the letter to the custodian.

The Executive Deputy Superintendent's declaration went on to say,

> In the event that the school cannot be opened because the custodian refuses to open the school, or is not present, call the borough custodial headquarters—as a second step, call the office of Mr. Hudson and Mr. McLaren.

Apparently some of the school custodians were sympathetic to the strike and were refusing to open the schools for those teachers who wanted to work.

On October 17 a group of teachers, including the designated "teacher in charge" and Horelick, went to Washington Irving High School where they were assigned to teach and presented to the school custodian the "letter of authorization" to the teacher in charge from the district superintendent. The custodian refused to open the building because he was unable to verify by phone the authenticity of the letter. Horelick nevertheless entered the building through a window with the intention of opening the doors himself. Inside the building he was stopped by the custodian who called for the police; they placed him under arrest after an altercation. Horelick's entrance was gained through a basement window which had been broken by a student that morning. While the custodian was nailing all the windows shut, Horelick had followed the student to the side of the school, jumped a fence and then entered the school through the broken window.

The second criminal trespass charge arose on Saturday evening, October 19, 1968, when at 10:00 p.m. Horelick and a group of people again entered the school, which was open that evening for a concert. Horelick announced to the custodian that they intended to stay over in the school until Monday in order to keep the school open. Shortly thereafter approximately 40 policemen arrived, and the custodian and the police told Horelick and the group to leave. Horelick left, spoke to a lawyer outside, and re-entered the building. After considerable discussion, he was again arrested for criminal trespass a few minutes after midnight on October 20, 1968.

The majority of the New York Court of Appeals, per Breitel, *J.*, held that the issue was "whether the resort to self-help by 'breaking and entering' in the classic sense, is permitted" and that this issue was "laid to rest long ago by successive and ancient statutes relating to forcible entry and detainer ( . . . former Penal Law, § 2304 . . . as to use of force against the person to gain entry . . .. [sic])" 30 N.Y.2d at 456, 334 N.Y.S.2d at 624. The majority opinion said, too, that "ultimately, analyses related to claims of right by owners and others entitled to rights of entry under property law" are immaterial. The majority noted that Horelick did not follow the prescription for opening schools improperly closed and that he did not call Borough Custodian headquarters or the offices of Mr. Hudson and Mr. McLaren, as the October 17 directive required. Putting the issue another way, the majority said that "the issue turns on whether the affected teachers had a 'license' or 'privilege' to open the school by surreptitious entry and force, and not whether they had a right or duty to be in the school (Penal Law, § 140.00, subd. 5)." 30 N.Y.2d at 458, 334 N.Y.S.2d at 626. The policy underlying the decision was stated to be that "It would be of the gravest consequence . . . to suggest that self-help force may be condoned or justified by an inapplicable analysis whether the school 'lawfully' should have been opened or closed." *Id.*

The three dissenting judges in an opinion per Bergan, *J.*, relied on the Board of Education's directive that the schools be open "if there is only one teacher going to the school" and that this placed a duty on Horelick to be at the school in spite of an illegal strike. The dissent said, "That defendant came in through a window is not remarkable in the light of the hostility of the custodians who were wrongfully closing the school." Legally, the dissent said that the prosecutor "has not established beyond a reasonable doubt that the defendant was 'wrongfully' in the school in which he was assigned to teach . . ." and that, relying on People v. Barton, 18 A.D.2d 612, 234 N.Y.S.2d 263 (1962), a colorable claim of right—even if it were mistaken—negatived the criminal intent necessary for conviction under the predecessor to § 140.10. The dissenting opinion did not, however, rely on the ex post facto argument made here and which Judge Lasker found persuasive. Apparently that argument was not made until the motion to reargue was presented to the Court of Appeals; that motion was denied without opinion. 31 N.Y.2d 709, 337 N.Y.S.2d 1029, 289 N.E.2d 569.

We cannot say that the record here was so totally devoid of evidentiary support as to raise a due process question. Garner v. Louisiana, 368 U.S. 157, 163, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); Thompson v. City of Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); United States ex rel. Terry v. Henderson, 462 F.2d 1125, 1131 (2d Cir. 1972). To be sure, a colorable claim of privilege or license is a defense to a charge of trespass under New York law. People v. Stevens, 109 N.Y. 159, 16 N.E. 53 (1888); People v. Barton, *supra*; Denzer & McQuillan, Practice Commentary, 39 McKinney's Consolidated Laws at 347 (1967). Judge Lasker held that even if Horelick's entry were in fact unauthorized, his conviction for trespass is vulnerable if he reasonably believed it to be authorized, reiterating the holding in People v. Barton that a colorable claim of right—even if it were mistaken—negatives the criminal intent necessary for

conviction. 18 A.D.2d at 612–613, 234 N.Y.S.2d at 264. Judge Lasker agreed with the dissent in the Court of Appeals that under the Board of Education directive Horelick had not only a right but indeed a duty to be at the school in spite of the illegal strike.

But we agree with the majority of the Court of Appeals that a license to do one thing, i. e., go in the front door, is not necessarily a license to enter surreptitiously through a basement window (the October 17 incident) or to enter for a concert on Saturday night and claim the right to stay the whole weekend (the October 19–20 incident). There was sufficient evidence for the trier of fact to determine that Horelick's alleged claim of right went beyond any reasonable interpretation of the scope of his license or privilege as set forth in the declaration of the Executive Deputy Superintendent on October 16, or in the letter of authorization to the teacher in charge.

Nor do we see that the majority of the Court of Appeals by interpreting what is a "claim of right" was retroactively changing the law of trespass; rather it was fleshing out that law within the background of the common law, since the precise question had not been previously ruled on.

It is true that the majority did refer to the forcible entry and detainer statutes. But the majority went on in its citations to this proposition not only to refer to those statutes but to the Model Penal Code § 3.06 (Tent.Draft No. 8, 1958); to the Restatement (Second) of Torts § 88 and Scope Note at 158–59 (1965); and also to the annotation, Right to Use Force at 141 A.L.R. 250, 276.

In doing so the majority opinion drew on the historical background of the law relating to the use of force in (re)taking possession of land. Under the common law of England, one entitled to possession of land was privileged to use force, short of that which threatened death or serious bodily harm, against one wrongfully withholding land from him. At a very early date, however, the Statutes of Forcible Entry and Detainer were enacted making it a crime in England to use force to gain possession of land. See Restatement (Second) of Torts § 88 at 159. The limitation of such self-help remedies expressed the policy, which most states have recognized as part of their common law, that property rights were to be recognized as being secondary to the preservation of order. The Restatement (Second) of Torts, in developing the "common law background" in this area, makes it clear that the use of force in entering upon premises has been narrowly circumscribed, and as such that background serves to undercut the reasonableness of Horelick's "claim of right" here.

The reference to the forcible entry and detainer laws, which Judge Lasker was careful to show apply only where the force is unusual or of an extraordinary nature with a tendency to bring about a breach of the peace, Drinkhouse v. Parka Corp., 3 N.Y.2d 82, 143 N.E.2d 767, 164 N.Y.S.2d 1 (1957); Fults v. Monroe, 202 N.Y. 34, 95 N.E. 23 (1911), was made, as we see it, only by way of background. Judge Lasker concluded that "Horelick's conviction for trespass was sustained essentially because the majority of the Court of Appeals found that his conduct constituted forcible entry and detainer." We disagree; we view the Court of Appeals majority's holding to have been that

> Since only force or some other illegal method could be used to effect an entry which would inevitably provoke counter-force (in this case, even riot), the remedy to open the school was by seeking the assistance of superiors who had the power (and perhaps the duty) to open the school. Even they were not entitled to use force, but they, if they wished to persist in their purpose to open the school, had to resort to the assistance of the police, and beyond that the courts.

30 N.Y.2d at 458, 334 N.Y.S.2d at 626.[3] In effect, the majority opinion was say-

---

**3.** On October 17, there was a crowd outside of the school and a substantial number of police were present when Horelick's surreptitious entry and scuffle occurred. When

ing that under the circumstances Horelick's authorization to be at the school could have implied no reasonable claim of right which would have justified the use of force, rather than the use of administrative or judicial process, to enter the school on October 17, or with respect to the October 19–20 incident to remain in the school through a weekend awaiting Monday's classes.

 Certainly the dissent in the Court of Appeals did not consider that there was a change in the New York law wrought by the majority; there was simply a disagreement as to whether it had been established beyond a reasonable doubt that defendant was "wrongfully" in the school. In short, the state trial court's conclusion that petitioner "was not in the position to assert that his entry was under a color of right," either in connection with the October 17 incident or the October 19–20 incident, has to be sustained. Williams, the designated teacher in charge, was never authorized to try to force his way in, and, indeed, there was no authorization to him which would have permitted him to delegate his authority to Horelick to enter even peacefully. *See* Adickes v. Leary, 436 F.2d 540 (2d Cir.), cert. denied, 404 U.S. 862, 92 S.Ct. 66, 30 L.Ed.2d 606 (1971). In short, the New York Court of Appeals' holding that the defense of license or privilege cannot be invoked to justify conduct beyond that authorized by the license was a reasonable interpretation of New York law. *Cf.* Reed v. New York & Richmond Gas Co., 93 A.D. 453, 87 N.Y.S. 810 (1904); Restatement (Second) of Torts §§ 168–170, 214, comment at 407. We believe the statute provided "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). We, of course, are bound by

New York's own interpretation of New York state law. O'Brian v. Skinner, 414 U.S. 524, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974); Garner v. Louisiana, *supra.* *See also* Schaefer v. Leone, 443 F.2d 182 (2d Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 277, 30 L.Ed.2d 184 (1971).

Judgment reversed.

(where one corporate officer and one-third shareholder kicked open the door of an apartment used by the corporation); there the exercise of a claim of right carried with it no such potential for dire consequences.

---

Judge Lasker found no threat of a riot, we suppose in the context of an angry strike that it was not unreasonable for the Court of Appeals majority to have considered it a possibility. This seems further to distinguish the present case from People v. Barton, *supra*