Scileppi, J.
During July, 1963 representatives of the Joint Committee on Equal Opportunity sought to have Governor Rockefeller cease construction on State buildings until such time as the unions working at these construction sites admitted as apprentices in their organizations members of minority groups. In furtherance of their protest the committee obtained permission from Governor Rockefeller to (1) have up to nine members of their group remain in the press room of the Governor’s New York City office (the Governor is the owner of the *88 building); (2) replace from time to time members of the group who were in the office; and (3) use telephones and lavatories in the building.
Approximately three weeks later a group of seven members of the committee, including one Jeffrey Glick, one Steven Frieder, and the five appellants herein, sought to gain entrance into the Governor’s office. They were informed by a security guard that, since there were already three members of the committee inside, one out of the now ten visitors would have to leave. The seven new arrivals refused and sat down upon the stairs at the entrance to the building. The Governor was called and he ordered the group’s removal from the building. The police were summoned and asked all seven to leave. When they refused the security guard asked the police to place them under arrest. Thereupon the police told all seven they were under arrest. Frieder and Glick voluntarily left the building. The appellants, however, refused to get up from the stairs thereby requiring the police to physically carry them out of the building.
Frieder, Glick and the appellants were convicted of unlawful intrusion on real property (former Penal Law, § 2036) and appellants were also convicted of resisting a public officer in the discharge of his duty (former Penal Law, § 1851).
On appeal to the Appellate Term, the People conceded under the authority of People v. Lawson (16 N Y 2d 552) that the convictions for unlawful intrusion must be reversed because the original entry into the building was lawful. The Appellate Term, however, affirmed the appellants’ convictions of resisting a public officer in the discharge of his duty. It is from the affirmance of those convictions that the appellants have appealed pursuant to permission granted by a Judge of this court.
Prior to July 1, 1963 section 177 (subd. 1) of the Code of Criminal Procedure provided that a peace officer could not effectuate a lawful arrest, without a warrant, unless a crime was being committed or attempted in his presence. Therefore, a person could use reasonable force to resist an arrest (People v. Cherry, 307 N. Y. 308) by a peace officer without suffering repercussions under section 1851 of the former Penal Law so long as he was not convicted of the underlying crime (People v. Dreares, 15 A D 2d 204, affd. 11 N Y 2d 906).
*89 In Breares, two plain-clothes transit officers observed the defendant for about 15 minutes standing near the ladies’ room on the mezzanine between two train platforms. When asked what he was doing, the defendant replied it was none of their business. After the officers revealed their identity, the defendant stated he was waiting for a train. When asked why he was not waiting for the train on the platform, he merely shrugged his shoulders. At this point the officers placed the defendant under arrest. Although the defendant successfully broke away from their grasp, he was later subdued after inflicting a minor injury upon one of the officers.
The defendant was charged with loitering and assault in the third degree resulting from his alleged unlawful resistance to the arrest. After being acquitted of the loitering charge, the defendant appealed the assault—third conviction.
In reversing the conviction, the Appellate Division stated:
“ The prior acquittal for loitering, which is not disputed, is determinative that defendant was not guilty of the underlying offense for which he was arrested * * *
“ Such acquittal, then, raises the issue as to the lawfulness of the arrest in which defendant forcibly resisted the transit officers. The rule in this State is that an arrest without a warrant for an offense less than a felony must be posited upon the actual commission of the crime or offense in the presence of the arresting person (Code Crim. Pro., § 177; Stearns v. Titus, 193 N. Y. 272, 275). Defendant’s prior acquittal of the crime for which he was arrested consequently established the arrest to have been unlawful, and he was therefore entitled to resist such an arrest with reasonable force (People v. Cherry, 307 N. Y. 308).” (People v. Dreares, at p. 206.)
Apparently reacting to the result reached in Dreares, the Legislature amended section 177 (subd. 1) effective July 1, 1963 to allow a police officer to arrest without a warrant when he has reasonable grounds to believe that a crime is being committed in his presence.
The facts in the instant case having occurred subsequent to the effective date of the amendment, it becomes necessary to determine whether the officers had reasonable grounds for believing that a crime was being committed by the appellants at the time of the arrest; for surely after the amendment to *90 section 177 (subd. 1) an acquittal of the underlying crime is no longer dispositive of the lawfulness of the arrest.
The appellants have taken the position that section 2036 (former Penal Law) defines an unlawful intrusion as one ‘ ‘ without authority from the owner thereof ’ ’; that, since the record proceeds on the assumption that the police tv ere aware the entry was authorised, we should rule as a matter of law that the police did not have reasonable grounds to believe section 2036 was being violated and, therefore, the arrests were unlawful and could be resisted with reasonable force.
The record, however, does not indicate that the police in fact knew that the original entry was lawful. Without such knowledge a peace officer before, as well as after, the Lawson decision could reasonably believe that the crime of unlawful intrusion was being committed in his presence by merely observing the presence of persons on property which they apparently had no right to enter. Certainly, it is reasonable to infer, absent any proof to the contrary, that such persons are unlawfully upon such property and have been unlawfully thereon ah initio, and if, as in the instant case, the facts reveal that the initial entrance was lawful, it in no way should affect the lawfulness of the arrest.
The sole question left to be answered is whether the conduct of the appellants subsequent to being told that they were under arrest should be characterized as resistance under section 1851 of the former Penal Law. That section provided: “ A person who, in any case or under any circumstances not otherwise specially provided for, wilfully resists, delays or obstructs a public officer in discharging, or attempting to discharge, a duty of his office, is guilty of a misdemeanor.”
Appellants argue that their inaction cannot be viewed as willful resistance because there was no affirmative duty on their part to assist the officers in making the arrest by walking out of the building. We cannot agree. The appellants’ refusal to act as directed was an obstruction to the police officers in the performance of their duty. Bach of the appellants delayed his own arrest and neee'ssarily the arrest of the others. Thus, notwithstanding the fact that the appellants’ resistance was passive, it nevertheless constituted resistance under section 1851 (People v. Martinez, 43 Misc 2d 94; People v. Knight, *91 35 Misc 2d 216, 222). To hold otherwise would necessarily inhibit the public officer in the performance of his duty — a duty, we might add, which has become increasingly more difficult to perform with each passing day.
Accordingly, the judgment appealed from should he affirmed.
Chief Judge Fuld and Judges Burke, Bergan, Breitel and Jasen concur.
Judgment affirmed.