OPINION OF THE COURT
James C. Harberson, Jr., J.
FACTS
On October 22, 1993 the defendant, Reverend Donald J. Bauer, along with other people, entered onto the premises of George C. Couch, M.D. and blocked the door to his place of business. The defendant was advised he was trespassing, and upon his refusal to leave, an officer from the Watertown Police Department advised the defendant he was under arrest for a violation of Penal Law § 140.05, trespass.
The defendant remained limp and refused to cooperate with the officer. The officer was forced to lift the defendant from a seated position and carry the defendant some distance to the patrol car because he intentionally refused to get up and walk.
The defendant states he was present at Dr. Couch’s office in hopes of persuading mothers from allowing their babies to be killed in the abortion clinic.
The defendant was charged with Penal Law § 140.05, trespass, and § 205.30, resisting arrest. The defendant waived his right to a jury trial on the charges and signed a waiver per CPL 320.10 before the court on November 9, 1993 while represented by counsel, with the District Attorney’s office also present. All parties agreed the trial would be by a stipulated set of facts submitted to the court.
PENAL LAW § 140.05: TRESPASS
The court finds the facts show beyond a reasonable doubt the defendant is guilty of a violation of Penal Law § 140.05 on *590 October 22, 1993 when he remained unlawfully on a premises knowingly after he was requested to leave by the owner.
DEFENSE OF JUSTIFICATION
The defendant argues the defense of justification, Penal Law § 35.05, as to the charge of Penal Law § 140.05, trespass. The defendant maintains Public Health Law § 4130 — entitled "Births; registration”, subdivision (1), definition of live birth— supports his contention a live birth takes place each time an abortion is performed. The defendant asserts based on People v Hall (158 AD2d 69) that once a live birth takes place, any actions of another killing the child is a crime which the defendant is justified in attempting to prevent by his actions.
Based on Hall (supra), People v Vercelletto (135 Misc 2d 40), People v Archer (143 Misc 2d 390) and People v Crowley (142 Misc 2d 663), the court finds the defense of justification under Penal Law § 35.05 does not apply in this case because there is no evidence to support a violation of any section of Penal Law article 125.
RESISTING ARREST: PENAL LAW § 205.30 STATUTORY CONSTRUCTION
Section 5.00 of the Penal Law states: "The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of these terms to promote justice and effect the objects of the law.”
In People v Ditta (52 NY2d 657) the Court said "conduct that falls within the plain, natural meaning of the language of a Penal Law provision may be punished as criminal.” (People v Ditta, supra, at 660; see also, People v Allen, 178 AD2d 994 [4th Dept].)
McKinney’s Consolidated Laws of NY, Book 1, Statutes provides a guide for statutory construction. "Generally, in the construction of statutes, the intention of the Legislature is first to be sought from a literal reading of the act itself or of all the statutes relating to the same general subject-matter.” (Id., § 92, at 182.)
In addition to examining statutes of a similar subject matter, the commentary explains that, in particular, "[t]he Penal Law and the Code of Criminal Procedure [now Criminal Procedure Law], both relating to the criminal branch of the *591 law, are in pari materia” (id., § 221, at 380); and, "[w]hen construing * * * word[s] used in a statute * * * [t]he words of a statute are not construed singly, but each is construed in connection with other words of the context, and even with other statutes in pari materia” (id., § 234, at 399-400).
Legislation can be considered as being in pari materia with earlier statutes and "are properly considered as illuminating the intent of the Legislature in passing later acts” (id., § 222, at 384).
"The courts in construing a statute should consider the mischief sought to be remedied by the new legislation, and they should construe the act in question so as to suppress the evil and advance the remedy” (id., § 95, at 196).
The commentary continues, "[l]anguage of a statute is not to be accepted in all its sheer literalness without regard to the object which the statute was designed to accomplish; and a statute is not to be read with a literalness that kills meaning, intention, purpose, or beneficial end for which the statute has been designed” (id., § 96, at 209).
LEGISLATIVE INTENT
It is clear before Penal Law § 205.30 became law, under section 1851 of the Penal Law of 1909 passive resistance to arrest violated section 1851. Section 1851 stated: "A person who, in any case or under any circumstances not otherwise specifically provided for, willfully resists, delays, or obstructs a public officer in discharging, or attempting to discharge, a duty of his office, is guilty of a misdemeanor.”
In People v Williams (25 NY2d 86), the Court disagreed with the defendant’s argument "there was no affirmative duty on their part to assist the officers in making the arrest by walking out of the building * * * [t]he appellants’ refusal to act as directed was an obstruction to the police officers in the performance of their duty * * * [t]hus, notwithstanding the fact that the appellants’ resistance was passive, it nevertheless constituted resistance under section 1851.” (People v Williams, supra, at 90-91.)
In 1961 a State commission was created to revise the 1909 Penal Law and Code of Criminal Procedure (L 1961, ch 346).
Honorable Peter McQuillan, the Executive Director of the Commission on the Revision of the Penal Law in a conversation with this court in March 1994, advised the American Law *592 Institute’s Model Penal Code was used as a guide to drafting section 205.30.
This information clarifies the fate of section 1851 after the revised Penal Law was enacted and what relationship, if any, it now may have with section 205.30.
The American Law Institute’s Model Penal Code article 242 Introductory Note says (at 198) "The most important crime in this series is Section 242.1, which defines a misdemeanor of obstructing the administration of law or other governmental function * * * Specifically excluded from Section 242.1 are the acts of * * * 'refusal to submit to arrest.’ The effect of these exclusions is to relegate such conduct to the Section 242.2 offense of resisting arrest.”
Section 1851 of the 1909 Penal Law was moved along with various other sections into section 195.05 of the revised Penal Law. (See, People v Case, 42 NY2d 98; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Penal Law § 195.05 [1975].)
Penal Law § 205.30 was a modified form of section 242.2 of the Model Penal Code; the template on which Penal Law § 205.30 was patterned. "A person commits a misdemeanor, if for the purpose of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injuries to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.” (Model Penal Code § 242.2.)
But, this mold was broken in that the final wording of section 205.30 eschewed the appeasement to resistance found in the Model Penal Code’s version which encourages any combative means to resist arrest short of those which created "substantial risk” of bodily injury to the officer or which required "substantial force” to overcome. "It appears that only one recently revised code has adopted Section 242.2 without change, although quite a few have adopted comparable provisions limited to resisting arrest * * * the provision in New York [§ 205.30] illustrates a different variation from the Model Code by following the substance of Section 242.2 except that it does not require that the resistance involve risk of bodily injury.” (Model Penal Code § 242.2, comment 8, at 220-221.)
The Model Penal Code commentary recognizes New York’s rejection of any resistance to an arrest encouraged by Model *593 Penal Code § 242.2 observing that while "[s]ome revisions that substantially follow the Model Code approach * * * [o]thers broadly proscribe resistance by any means [citing Penal Law § 205.30]” (Model Penal Code § 242.2, n 34, at 221).
In People v Horelick (30 NY2d 453), the Court of Appeals confirmed New York’s no-nonsense intolerance of even "minor objection to arrest” (at 461) affirming such to be a criminal act in construing section 205.30. The majority rejected Judge Bergan’s characterization of the defendant’s actions as a "minor objection to arrest” (supra) as not being a "fair basis” (supra) to charge a separate crime of resisting arrest.
In People v Stevenson (31 NY2d 108, 112), the Court, in concluding the behavior by the defendant violated Penal Law § 205.30, incorporated Honorable Peter McQuillan and Richard Denzer’s Practice Commentary under section 205.30, " '[i]t is not necessary that a defendant use "force or violence” in obstructing the officer. It is enough that he engage in some conduct with the intent of preventing the officer from effecting an authorized arrest of himself * * *’ (Practice Commentary by Denzer and McQuillan, McKinney’s Cons. Laws of N. Y., Book 39, Penal Law, § 205.30, p. 677).”
RISK OF INJURY: THE BASIC LEGISLATIVE CONCERN ADDRESSED BY PENAL LAW § 205.30
Section 1851 of the 1909 Penal Law refers to "A person who, in any case or under any circumstances * * * willfully resists * * * a public officer in discharging, or attempting to discharge, a duty of his office” as violating the statute. Section 242 (5) of the 1909 Penal Law refers to "[a] person who * * * [a]ssaults another with [the] intent to * * * prevent * * * the lawful apprehension or detention of himself, or any other person” is guilty of violating the law. (See, Derivation Note, McKinney’s Cons Laws of NY, Book 39, Penal Law § 205.30, at 503 [1988].)
Penal Law § 205.30, derived from section 242 (5), says resisting arrest occurs when the defendant "intentionally prevents or attempts to prevent a police officer * * * from effecting an authorized arrest of himself or another person.” The word "assaults” has been deleted, the phrase "lawful apprehension or detention” has been replaced with "effecting” and "lawful” has been replaced by "authorized” (arrest). While section 1851 is not in the derivation table for section 205.30 (Distribution Table, McKinney’s Cons Laws of NY, Book 39, Penal Law *594 § 205.30, at xxx [1987]), it should be noted the phrase "willfully resists” is repeated, in effect, in section 205.30’s wording "A person is guilty of resisting arrest when he intentionally”.
Model Penal Code § 242.2 resisting arrest wording was altered for section 205.30 to "broadly proscribe resistance by any means” as was later confirmed by the Court of Appeals adoption in Stevenson (supra) of the McQuillan-Denzer Practice Commentary that it was not necessary the defendant use " ' "force or violence” ’ ” to violate the statute, but only that the defendant engage in some conduct with the " 'intent to prevent * * * effecting’ ” the arrest. That is why the word "assault”, found in the 1909 Penal Law § 242 (5), was removed from the wording of section 205.30 and replaced with "some conduct.” That is why the Court in People v Horelick (supra) rejected dissenting Judge Bergan’s plaint the defendant’s "minor objection to arrest” did not violate Penal Law § 205.30.
The reason New York "broadly proscribed resistance by any means” is succinctly stated in Matter of Clive W. (109 Misc 2d 788) where the court observed, "New York law has long been concerned with the interrelated rights and duties of the arresting officer and the individual faced with arrest.” (Matter of Clive W., supra, at 797.)
Penal Law § 205.30, read in pari materia with sections of the Criminal Procedure Law and General Municipal Law, show without doubt the Legislature wanted to avoid injury to the police officer and the citizen during the arrest procedure.
Penal Law § 35.27 prohibits the defendant from the "use of physical force to resist an arrest, whether authorized or unauthorized, which is being effected or attempted by a police officer * * * when it would reasonably appear that the latter is a police officer.”
In People v Simms (36 AD2d 23 [4th Dept]), the Court accurately gave the underlying reason for the enactment of section 35.27: "In a consideration of the legislative intent, we are persuaded by the well-found logic and reasoning in the practice commentary (McKinney’s Cons. Laws of N. Y., Book 39) following this section (Penal Law, § 35.27) * * * Obviously this statute is designed to protect the physical safety of the average citizen as well as that of the peace officer, and quite properly discourages altercations and eliminates the risk of injury. We are, of course, mindful of the presumption that the Legislature has investigated and found a constitutional and factual basis necessary to support the statute” (People v Simms, supra, at 24-25).
*595 Further evidence of the Legislature’s concern for the safety of police officers while effecting an arrest is found in General Municipal Law § 205-e (1) (L 1992, ch 474, § 1). This statute allows action by the police officer against a defendant based on "any neglect, omission, willful or culpable negligence of any person * * * in failing to comply with the requirements of any * * * statutes * * * and requirements of * * * the state.”
In Phalen v Kane (192 AD2d 186 [4th Dept]), the Court ruled General Municipal Law § 205-e (1) allowed the "plaintiff * * * to plead a cause of action predicated upon the defendant’s willful failure to comply with statutory law proscribing resistance to arrest.” (Phalen v Kane, at 189.)
THE ARREST EVENT ELEMENTS
"Arrest: The taking or detaining in custody by authority of law.” (Webster’s New Collegiate Dictionary [1976].)
CPL 120.80 (warrant of arrest; when and how executed) and 140.15 (arrest without a warrant; when and how made by police officer) outline the procedure to be followed effecting an arrest with or without a warrant by a police officer. In both sections, at subdivision (2), the protocol to be followed effecting an arrest is set forth.
CPL 120.80 (2) says "[u]nless encountering physical resistance, flight or other factors rendering normal procedure impractical, the arresting officer * * * must inform the defendant” of the warrant of arrest. Section 140.15 (2) says "The arresting police officer must inform such person of [his arrest] unless he encounters physical resistance, flight or other factors rendering such procedure impractical.” Both sections allow the police officer "[i]n order to effect the arrest [the officer] may use such physical force as is justifiable pursuant to section 35.30 of the penal law” (CPL 120.80 [3]; 140.15 [3]).
Using the ordinary meaning of the words in these sections of the Penal Law and Criminal Procedure Law, statutes in pari materia, one can discern effecting an arrest involves following a series of steps to reach an outcome.
The definition of arrest "taking or detaining in custody” clearly states two distinct parts of effecting the arrest, physical seizure and holding the defendant after the seizure. The word effect (effecting) means "to cause to come into being, syn.: event” (Webster’s New Collegiate Dictionary [1976]) and course (in the course of effecting or attempting to effect an *596 arrest) means "progression through a series of acts” (Webster’s New Collegiate Dictionary [1976]).
The entitlement of Criminal Procedure Law sections dealing with arrests with or without a warrant uses the word "how” which means "what method” (Webster’s New Collegiate Dictionary [1976]) and these instructions allow physical force to be used when the officer "encounters physical resistance * * * or other factors [which cause a situation] rendering [normal] procedure impractical.” Procedure means "a series of steps followed in a regular definite order” (Webster’s New Collegiate Dictionary [1976]).
An arrest, then, is a "normal procedure” involving a course of conduct, a progression through a series of acts to effect the taking or detaining in custody a person. When the "normal arrest procedure” is rendered impractical because the officer encounters physical resistance — or other factors — he may use necessary physical force to effect the arrest.
The taking and then detaining of a person involves a series of steps which include advising the person the reason for arrest, a pat down for weapons, handcuffing the defendant and escorting the defendant to the police car to be transported. This series of steps makes up the normal arrest procedure. (See, People v Monroe, 12 Cal App 4th 1174, 16 Cal Rptr 2d 267, cert denied Monroe v California, — US —, 114 S Ct 251, 126 L Ed 2d 204 [1993], where the Court said [at 1181] "[o]rdinarily, the word 'arrest’ implies a sequence of events that begins with physical custody and at least a minimal body search, and concludes with booking and incarceration or release on bail”.)
In New York, the Court in People v McNeil (21 AD2d 1, 3), Justice Breitel, dissenting, observed that an arrest continues until arraignment, citing Warner v State of New York (297 NY 395, 400).
The choice of the word "normal” describing the arrest procedure at CPL 120.80 (2) is used anticipating cooperation by the person being taken into custody during the various steps effecting an arrest — pat down, handcuffing and being ushered to the police vehicle. It is when these normal procedures are rendered impractical that physical force can be used to effect the arrest (Penal Law § 35.30).
DECISION
The unresolved issue since Penal Law § 205.30 became law *597 is whether a defendant’s submission to arrest combined with refusing to stand up, walk to the police vehicle and similar actions forcing the police to carry the defendant from the point the crime occurred is a violation of the statute.
"[T]here has been no citation to this court of any statute, rule or ordinance that requires a defendant to cooperate once the defendant is arrested and so long as the defendant does not affirmatively act to resist the arrest then there is no independently unlawful act that the defendant is committing.” (People v McDaniel, 154 Misc 2d 89, 92 [citation omitted].)
It is respectfully submitted that the McDaniel court failed to appreciate the evil and/or mischief sought to be remedied when the Legislature enacted section 205.30. The review of Penal Law of 1909 § 240 (5) and § 1851, Model Penal Code article 242, the Practice Commentary of McQuillan and Denzer, the Criminal Procedure Law sections in pari materia with section 205.30 of the Penal Law and case law clearly demonstrate the acts of the defendant violate the law.
The point of departure in making an arrest involves the process of informing, securing and escorting the defendant. Peaceful submission by the defendant to this routine implies cooperation with the arrest procedures so the officer does not have to overcome intentional physical resistance thereby risking injury to the officer or the defendant.
The defendant’s refusal to get up and walk to the police vehicle forcing the officer to pick up and carry the defendant to it, involves the use of physical force to overcome the defendant’s intentional physical resistance to cooperate with the normal arrest procedure. The defendant in attempting to resist the arrest uses the weight of his body against the officer’s effort to usher the defendant from the scene of the crime. The Gandhian tactic of passive resistance (Satyagraha) transforms the defendant’s arrest into a substantial physical effort for the police officer.
This is a very difficult and demanding task for any person, as anyone can attest to who has picked up and lugged a heavy suitcase without handles. This kind of activity places significant physiological strain on the muscles of the arms, back and legs as well as the cardiovascular system of the officer, and, under these circumstances, the officer could very easily suffer physical injury.
The defense argues the absence of language by the Legisla *598 turc in Penal Law § 205.30 requiring a defendant to cooperate by voluntarily standing up and walking during a normal arrest procedure means there can be no crime in refusing to do so after submitting to arrest. The defense maintains conduct is not criminal unless the act or failure to perform an act is a duty imposed by law citing People v McDaniel (supra).
The issue is whether this conduct engaged in by the defendant is the kind proscribed by the word "resist” in Penal Law § 205.30. A review of Penal Law § 15.00 belies the defendant’s position. Conduct refers to an act or omission coupled with its culpable mental state. An act "means a bodily movement”; to act means to either perform an act or omit to perform an act; and, a voluntary act means a consciously performed bodily movement "as a result of [an] effort or determination.” An omission means "a failure to perform an act as to which a duty of performance is imposed by law.” The culpable mental state is found in Penal Law § 15.05.
The normal arrest procedure, as heretofore determined, is made up of a series of steps. If the defendant intentionally resists the officer at any point during the procedure, either before or after peaceful submission, the defendant violates Penal Law § 205.30 because of the Legislature’s objective to discourage conduct by the defendant which forces the officer to use physical force to overcome it, risking injury to himself or the defendant.
The defendant’s conduct is the intentional act of remaining seated and refusing to walk at that point in the arrest procedure when the officer must remove the defendant from the point of the offense to the police vehicle. This conduct is an omission "to perform an act as to which a duty * * * is imposed by law” because Penal Law § 205.30 bars resistance during the arrest procedures by the defendant. To omit means to decline "to make use of: Forbear” (Webster’s New Collegiate Dictionary).
A defendant, then, as a matter of law, is to forbear the act of resistance, omit it from his response to arrest, during the normal arrest procedure which is the duty imposed on him by Penal Law § 205.30. The use of his body weight as resistance to the officer’s effort to remove him from the crime scene is a failure by the defendant to perform an act (to get up and walk), the performance of which cannot be omitted by the defendant in meeting the legal duty to avoid resistance the officer must then overcome by physical force involved in lifting and then carrying the defendant.
*599 In this sense the crime of the defendant is one of omission by failing to act in a manner that does not resist the officer. The defendant’s conduct, whether an act of commission (active resistance) or omission (passive resistance), done intentionally to resist the police officer during a normal arrest procedure, results in the same risk of injury to the officer the defendant has the duty to avoid under Penal Law § 205.30.
The statutes and case law heretofore cited clearly proscribe any means of resistance by the defendant risking injury to the officer. The normal arrest procedure assumes physical cooperation from the defendant. The defense argues "so long as the defendant does not affirmatively act to resist arrest” such as flight or fighting, he complies with the law. The defendant is wrong because whether the physical resistance involves the officer in a race, a wrestling match or a weightlifting event, the possibility of injury exists and that is what the Legislature intended to address in Penal Law § 205.30.
The evidence shows beyond a reasonable doubt the defendant resisted or attempted to resist his arrest by intentionally using his body weight against the officer’s efforts in effecting the arrest. The defendant by intentionally remaining seated or lying flat during the arrest procedure forced the officer to exert physical force to carry the defendant from the place of the criminal act to the police car, and for this reason, the court finds the defendant guilty of Penal Law § 205.30.
[Portions of opinion omitted for purposes of publication.]