OPINION OF THE COURT
Per Curiam.
Order entered October 27, 1994 modified, on the law and on the facts, by denying defendants’ motions to dismiss the charges of disorderly conduct and by reinstating the accusatory instruments insofar as they relate to those charges; as modified order affirmed.
The discretionary power to dismiss a pending criminal prosecution in the interest of justice is to be exercised sparingly (see, People v Hudson, 217 AD2d 53, 55; People v Harmon, 181 AD2d 34, 36) and upon reviewing the record in these consolidated appeals, we conclude that none of these matters presents the rare instance where a dismissal in the interest of justice is warranted.
All 90 defendants herein were charged with disorderly conduct, a violation (Penal Law § 240.20 [5] [obstructing vehicular or pedestrian traffic], [6] [refusing to comply with a lawful police order to disperse from a public assembly]), in connection with their videotaped participation in a 1994 St. Patrick’s Day lesbian and gay "protest” parade on Fifth Avenue in New York City. The substantial impact of the unauthorized parade on midtown vehicular traffic was accurately described by Criminal Court as follows: "When [the] marchers refused a direct police order to leave the intersection of Fifth Avenue and 42nd Street, they snarled traffic for an hour and a *773 half and caused delay and inconvenience for an untold number of their fellow New Yorkers.” Despite noting that there was "uncontrovertible” evidence of the defendants’ guilt, that police "had a legitimate interest in preventing any public disorder that may have ensued” had the protest parade proceeded unabated, and that no police misconduct occurred during the defendants’ arrests, Criminal Court ultimately granted dismissal of all of the disorderly conduct charges in the interest of justice. The principal basis for the trial court’s action was its professed disapproval of the city’s prior refusal to issue a parade permit to the Irish Lesbian and Gay Organization, of which defendants are members.
The court’s disagreement with the city’s handling of what safely can be called a sensitive political issue hardly provides a "compelling” consideration "clearly demonstrating” that conviction or prosecution of the defendants would "result in injustice” (CPL 170.40 [1]; see, People v Molfino, 178 AD2d 238, 241), particularly in these circumstances where, as the trial court itself recognized, the "record is bare of any indication that the defendants sought to avail themselves of the judicial process to force the police and city to issue them a parade permit.” As one noted jurist explained in a similar setting: "It is irrelevant whether [municipal officials acted] * * * out of factional motivation or because of fear that this [assemblage and the potential response of others to it] * * * would be out of control. For their judgment and action, their conduct is reviewable elsewhere, and not by [Criminal Court in the context of a Clayton motion]” (People v Horelick, 30 NY2d 453, 457 [Breitel, J.]).
It may be that the defendants present a sympathetic case since, as the District Attorney conceded below, "[t]he sincerity of defendants’ belief(s) cannot be doubted.” Equally true, however, is the District Attorney’s further point that "sincere beliefs are not an excuse for lawless conduct”, conduct that past experience has taught is likely to keep recurring. On balance, and since an interest of justice dismissal might have an adverse impact upon public confidence in the criminal justice system (CPL 170.40 [1] [h]; see, People v Reyes, 174 AD2d 87, 90), we conclude that the better result is to reinstate the disorderly conduct charges.
Turning to the charges of resisting arrest (Penal Law § 205.30), Criminal Court correctly concluded that the allegations set out in each of the informations charging defendants with resisting arrest are insufficient, even if true, to establish *774 every element of that offense (CPL 100.40 [1] [c]; see, People v Alejandro, 70 NY2d 133). In merely delaying the inevitable by allegedly remaining seated during the arrest process, defendants did not "attempt! ] to prevent” their arrest within the meaning of the resisting arrest statute as presently constituted (see, People v McDaniel, 154 Misc 2d 89, lv denied 81 NY2d 889). Read in accordance with the "ordinary and accepted meaning” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94) of the featured word "prevent” ("to deprive of power or hope of acting, operating or succeeding in a purpose”; implying "an insurmountable obstacle or impediment” [Webster’s Third New International Dictionary 1798 (1981)]), the provisions of Penal Law § 205.30 simply do not cover the type of inaction attributed to these defendants. As the Appellate Term, Second Department stated in parallel circumstances, "there has been no citation to this court of any statute, rule or ordinance that requires a defendant to cooperate once that defendant is arrested and so long as the defendant does not affirmatively act to resist the arrest (People v Stevenson, 31 NY2d 108, 112 [backing up]) then there is no independently unlawful act that the defendant is committing.” (People v McDaniel, supra, 154 Misc 2d, at 92.)
People v Williams (25 NY2d 86), decided under former Penal Law § 1851, does not compel a contrary result. In concluding that the acts of passive resistance there involved constituted "resistance]” under the predecessor resisting arrest statute, the Court of Appeals tracked the then relevant statutory language, noting that the defendant’s conduct in refusing to act as directed was "an obstruction to the police officers in the performance of their duty * * * [which] delayed his own arrest and necessarily the arrest of the others.” (Supra, at 90; emphasis added.) Significantly, the separate but related concepts of "obstruction” and "delay”, which appeared prominently as the lone definitional components of resistance under former section 1851 and were thus appropriately emphasized in Williams, were not carried forward into section 205.30. Since section 205.30 represents not a mere "change in phraseology” (dissenting opn, at 776) but a dismantling of former section 1851, the decisional law developed under the predecessor statute is not determinative of the meaning of the present statute.